UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19 CR 961 SRC ) |
| MICHAEL MOORE, | ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Michael Moore, represented by defense counsel Lenny Kagan, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

**A.    The Guilty Plea:** Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's waiver of indictment and voluntary plea of guilty to the superseding information, the United States agrees that no further federal prosecution will be brought in this District relative to the conduct alleged in the superseding information of which the Government is aware of at this time.

1

**B.    The Sentence:**    In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree to jointly recommend a sentence of twelve months and one day imprisonment. The parties further acknowledge and agree that the Court is neither a party to this agreement nor bound by the guidelines recommendations and sentencing recommendations contained herein.

**C.    Forfeiture:**    Defendant agrees to forfeit all of defendant's interest in all items seized by law-enforcement officials during the course of their investigation and will not contest the forfeiture of such items.  Defendant admits that all United States currency, weapons, property and assets seized by law enforcement officials during their investigation constitute the proceeds of defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity.  Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the Government and to rebut any claims of nominees and/or alleged third party owners.  Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

### 3. ELEMENTS:

As to superseding information, the Defendant admits to knowingly violating Title 18, United States Code, Section 4 and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(1) That Anthony Caldwell, Maricus Futrell, Roman Frenchie, Tyrone Sims, Kevin White and others committed the offense of possession with intent to distribute fentanyl;

(2) The Defendant had full knowledge of their drug distribution activities;

(3) The Defendant failed to notify authorities of the drug distribution activities of the co-conspirators; and

(4) The Defendant took affirmative steps to conceal the criminal activities of the co-conspirators.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### The Conspiracy

Beginning in 2018 and continuing up until the time of the indictment, various individuals both indicted and unindicted began distributing large quantities of fentanyl in the St. Louis Metropolitan area. Their source of supply was initially Juan Gonzalez (hereafter "Gonzalez") who was eventually indicted in the Eastern District of Missouri in Cause Number 4:19CR211 RLW, for conspiracy to distribute and possess with intent to distribute both fentanyl and methamphetamine. Gonzalez continued to supply Anthony Caldwell, Maricus Futrell, Roman Frenchie, Tyrone Sims, Kevin White and others until Gonzalez was arrested by the DEA and U.S. Marshals in September, 2019. Futrell and co-conspirators then obtained another source of supply in Arizona and continued to distribute fentanyl.

Prior to his arrest, Gonzalez would either ship packages of fentanyl through the mail or would hand-deliver the narcotics to co-conspirators like Jazmynn Lester and Aaliah Lester, who had traveled to Arizona at the request of co-conspirator Maricus Futrell (hereafter "Futrell") and others. Futrell was also under indictment in the Eastern District of Missouri, charged in the same

3

case as Gonzalez. While Gonzalez and Futrell were fugitives in that indictment, they continued to conspire with others to distribute fentanyl in the Eastern District of Missouri.

Once the raw fentanyl was either mailed or transported to the St. Louis area, various co-conspirators would "cut" or "stretch" the fentanyl with various products like Dormin, in order to increase its volume and thereby increase their profit. The cut fentanyl was then put in capsules and sold by various members of the conspiracy which included Anthony Caldwell, Roman Frenchie, Tyrone Sims, Kevin White, Martes Mosely and Maricus Futrell.

Jazmynn Lester and Aaliah Lester were "mules" in that they traveled to Arizona to meet with the source of supply in order to pay U.S. currency for the fentanyl and then transport the fentanyl back to St. Louis for distribution. They were compensated for their role as mules. Jazmynn Lester also provided her mother's residence as an address where fentanyl could be received from Arizona. Jazmynn Lester was a paramour of co-conspirator Kevin White.

Jimmiesha Williams (hereafter "Williams") provided a safe house for co-conspirators to conduct their business and knowing that drug distribution activities were occurring in her home, allowed the activity to continue. Co-conspirators would knowingly store narcotics, firearms and U.S. currency in her residence. She would also register vehicles in her name in order to shield other co-conspirators, especially her paramour Maricus Futrell from potential law enforcement scrutiny. Williams would also take various vehicles used by co-conspirators to body shops to get them painted, again in an effort to thwart law enforcement scrutiny. Williams did these things, knowing that the conspirators distributed and possessed with the intent to distribute fentanyl. She also concealed this knowledge from law enforcement and took steps to conceal the drug distribution activities of the conspirators.

4

Deniesha Baker (hereafter "Baker") provided a "safe house" or "stash house" for her paramour Futrell, where he would store narcotics and U.S. currency (proceeds of his drug trafficking) and she maintained her premises for the purpose of distributing fentanyl. Futrell and other members of the conspiracy would keep a "lab" at Baker's house, which was comprised of drug paraphernalia used to cut the fentanyl and package it for distribution – grinders, pill presses, scales, empty capsules, Dormin, etc. Baker would also allow Futrell to keep his vehicles at her residence, again in an effort to thwart law enforcement scrutiny.

On September 20, 2019 a search warrant was executed at a residence on Ramsey Drive, within the Eastern District of Missouri. The residence had been tied to the various narcotics activities alleged in the conspiracy indictment. Defendant was found in a bedroom of the residence along with co-defendant Tyrone Sims and an unindicted co-conspirator. Additional U.S. currency, drug paraphernalia, fentanyl, marijuana and firearms were found in various rooms within the Ramsey Drive residence. After arrest warrants were issued in this case, Defendant was found in the 2000 block of Desoto, in St. Louis City, along with an unindicted co-conspirator. Defendant was standing outside of a house while federal agents executed a search warrant. Defendant was arrested without incident but possessed a satchel with U.S. currency and empty capsules. Defendant admits that he was concealing the U.S. currency and empty capsules from law enforcement on behalf of co-conspirators.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than three years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 3 years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A. **Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 15, as found in Section 2X4.1(a) as the base offense level for the underlying offense of conspiracy is 24 (which results from the quantity of fentanyl attributable to Defendant as part of the conspiracy).

**(2) Specific Offense Characteristics:** 2 levels are added since a firearm was possessed, according to Application Note 1 to Section 2X4.1.

B. **Chapter 3 Adjustments:**

**(1) Accpetance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

6

    **(2) Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 14.

  C. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  D. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

  **7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  A. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

  **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing

Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

      **B.**    **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

      **C.**    **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

      **A.**    **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

      **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

      **C.**    **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

      **D.**    **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      **E.**    **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **F.**    **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

      **G.**    **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their

investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and

all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any

11

term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

### 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

1/5/2021
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

11-14-2020
Date

MICHAEL MOORE
Defendant

11-19-2020
Date

LENNY KAGAN  #53284 MO
Attorney for Defendant

12